[No. 4091. Decided March 11, 1902.]

JOHN CHRISTIANSON, *Respondent*, v. PACIFIC BRIDGE COMPANY, *Appellant*.

MASTER AND SERVANT — ACTION BY SERVANT FOR INJURIES — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Where one unfamiliar with trench digging and the nature of the ground was ordered into a trench by the foreman in charge of the work and directed to excavate the softer earth in the side of the trench beneath an upper layer of cement gravel, which he did to a lateral depth of a foot and a half, and was injured by the caving in of the wall of the trench upon which he was working, the questions of his assumption of risk and of his contributory negligence are for the jury, in an action brought by him to recover for his injuries.

Appeal from Superior Court, King County.—Hon. ARTHUR E. GRIFFIN, Judge, Affirmed.

*Piles, Donworth & Howe,* for appellant.

*Walter S. Fulton* and *John B. Hart,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—On the 16th day of April, 1900, the appellant, a corporation, was engaged in constructing a pipe line from Cedar Lake, in King county, Washington, into the city of Seattle; the same being part of what is known as the "Cedar River Water System." The respondent was in the employ of appellant as a laborer. A large ditch had been dug, along and through which said pipe line was being laid. The evidence is not harmonious as to the depth of the ditch. The testimony of some of the witnesses as to the depth placed it from seven to eight feet, and that of others from eleven to twelve feet. The ditch was of sufficient width at the bottom to admit a pipe about four feet in thickness, and still leave a small space along either side, —perhaps two feet. The pipe was also four feet high. The ditch was wider at the top than at the bottom, the sides being made with a slope toward the bottom. At a point near Thirteenth and Massachusetts streets in the city of Seattle the pipe had been placed in its proper position in the ditch, but had not yet been covered with earth. Respondent and another were engaged in shoveling loose dirt which had been thrown out of the ditch to the side of the pipe. The dirt so thrown in was being tamped or packed by another workman at the lower sides of the pipe so as to hold it more securely in its place until the heavier work of filling the entire ditch should be done. The upper portion of the sides of the ditch consisted of a hard, gravelly formation resembling cement or concrete, but near the bottom the formation was sandy. Respondent and other witnesses testify that while he was engaged in shoveling the earth as aforesaid the foreman of appellant in

charge of the work at that place came along and said to the respondent, in effect, that the process of shoveling dirt from above for tamping purposes was too slow, and directed respondent to get down into the ditch, and by the use of a pick to dig out the soft earth from the side of the ditch at the bottom; adding that in that manner one man could do as much work as two could do as they were then working. It was further testified that respondent immediately complied with the direction of the foreman, and got down into the ditch and began digging with his pick from the hard, gravelly formation at the top of the ditch, endeavoring to loosen it and drag it into the ditch; but that the foreman informed him he did not intend for him to dig from the top, and then went down into the ditch himself, took the pick from the hands of respondent, began digging the soft sand from the side of the ditch at or near the bottom, by way of showing respondent how he desired it done, and then handed the pick back to respondent, with the direction that he should dig as he had been shown; remarking at the time that the soft earth at the bottom was much better for tamping purposes than the harder formation respondent had endeavored to dig from the top. It was further testified that the foreman then went away to look after some other part of the work, and that respondent continued to dig as he had been directed; and respondent himself testified, that, before leaving, the foreman assured him that the top was solid and would not cave in. Respondent continued to dig at the place for ten or fifteen minutes, when a mass of earth broke away from the side wall of the ditch and fell upon him, throwing him back against the pipe and rendering him entirely helpless. The earth was removed from about him by his fellow workmen, and he was taken out in an unconscious condition; having received injuries about the back and hip, and probably others.

This suit was brought for the purpose of recovering damages from appellant on account of said injuries. The cause was tried before a jury, and a verdict returned in favor of respondent in the sum of $1,950. Appellant moved for a new trial, which was denied, and thereupon judgment was entered upon the verdict of the jury for the full amount thereof. From said judgment this appeal was taken.

There is no dispute as to the manner in which the accident itself occurred, or as to the fact that respondent received some injuries. The serious character of the injuries as claimed by respondent is contested by appellant, and appellant also denies that the respondent was directed by the foreman to get into the ditch. The foreman himself testified that he did not so direct respondent, but, upon the contrary, says he told him to get out of the ditch, when he saw him there, and warned him that he was in danger. In this he is supported by the testimony of at least one other witness. It is first assigned as error that the court denied appellant's challenge to the legal sufficiency of the evidence at the close of respondent's testimony; and it is further assigned that the court erred in denying appellant's motion for a non-suit, and also in refusing appellant's request at the close of respondent's evidence that the court should instruct the jury to return a verdict for the appellant. It is insisted by appellant that the evidence introduced in behalf of respondent showed that his injury was caused by respondent's undermining the side of the ditch, causing the upper earth to fall upon him; that the risk of doing such an act was one which he assumed; that his act was one of contributory negligence, defeating his right to recover, and it was immaterial whether the foreman told him to do such act or not. In considering these assignments of error, it must be conceded that respondent went

into the ditch and did the work he was doing at the direction of appellant's foreman, since three witnesses so testified. It is argued that the danger was so obvious that any sane man would know that, if the wall of the ditch were undermined at the bottom, the top wall would cave in. It will be remembered that the space between the pipe, which was four feet high, and the side wall, was very narrow. In this narrow space respondent was digging. He had worked there ten or fifteen minutes. It is manifest he could not have dug a considerable amount of earth within that time, and under the particular circumstances. The evidence shows that he had probably dug under the side wall to a distance laterally of one foot and a half. The extent of the digging in other directions is not very clear. All the witnesses agree that the top portion of the side wall was composed of a very hard, gravelly formation, resembling cement or concrete. Such a substance, it may not have been unreasonable to suppose, would be supported to some extent by its lateral adherence, more than would have been the case with ordinary earth, and that it would not be as apt to break and cave as ordinary loose dirt, even though undermined to some extent. The danger can therefore scarcely be said to have been as obvious as it might have been had the wall been entirely composed of ordinary earth or of sand, as it was at the bottom. The evidence showed that respondent was not accustomed to digging in such trenches. He had not helped to dig this trench. His work had been that of assisting to put bands around the pipe after it was placed in the ditch. But he had been directed to shovel earth as aforesaid for a time before the accident occurred. It cannot be said that he was as chargeable with knowledge of the nature of the soil there, as if he had assisted in digging the ditch at that point, or as if his attention had been specially directed to the nature of the

formation.   For the purposes of this discussion, it must be considered that the foreman directed respondent to work there, showed him just where and how he was to work, and assured him that there was no danger of the top wall breaking by reason of digging as he was directed.   Under such circumstances, the appellant, through its foreman, was chargeable with knowledge of the nature of the soil and of the attendant danger.   The wall of the ditch had previously caved in, and at a point not far from where respondent was working, but it appears that respondent did not know of it.   A witness experienced in work of that character testified that the walls should have been "shored up," or braced by timbers.   The danger was, however, not so obvious to one with respondent's lack of experience, and who had been engaged at other work, that it may be said, as a matter of law, that he had no right to rely upon the foreman's direction and assurances, and that he assumed the risk.   In *Laporte v. Cook,* 21 R. I. 158 (42 Atl. 519), an employee of a city was digging in a trench six and one-half feet deep, as directed by a boss.   The bank caved in and injured him.   He had been working in the trench but a short time, and did not know of the peculiar character of the soil; nor did he know what the boss knew,—that the bank of the trench had previously caved in in other places. It was held that the question whether he was guilty of contributory negligence was for the jury.   The above case is criticized by appellant as not being in point here, for the reason that it appears that the bank in that case fell from natural causes, and not from being undermined by the party injured; and it is also suggested that *Larich v. Moies,* 18 R. I. 513 (28 Atl. 661), is approvingly cited and distinguished, it being contended that the last named case does not support respondent's recovery here.   In that case the injured party was shoveling sand at a sand bank.

There was an overhanging bank, which was held to be obvious, and recovery was denied. The conditions in the case at bar, as outlined above, do not seem to us to present such an obvious danger as in the one last mentioned. There is nothing in the case to indicate that the formation was similar to that in this case, as to the concrete character of the upper wall. Indeed, such an overhanging wall in an ordinary sand bank, where sand is being undermined extensively for market purposes, seems to us to present an entirely different case, as to obvious danger. In any event, we think the general principles discussed in *Laporte v. Cook, supra,* are applicable here. The court, at page 520 (21 R. I. 160), said:

"*Coan v. City of Marlborough,* 164 Mass. 206, 41 N. E. 238, was a much stronger case for the defendant than is the one before us, but the court held the question of assumed risk to be one of fact for the jury. In that case the court said: 'Whether the plaintiff knew and appreciated the danger from the lack of proper shoring was a question of fact. He knew that the trench was not close-sheathed, and saw what portion of its sides were not covered; knew the nature of the soil and the depth of the trench, and that blasting was done to remove rock at the bottom, and that small quantities of earth frequently fell from the sides, and he had worked much in such trenches. These things make in favor of the contention that he knew and appreciated the danger, and assumed the risk of injury. But they are not conclusive, as there was evidence of other facts proper for the consideration of the jury. The plaintiff was a common laborer, working where he was told to work, and having no discretion as to where he should stand.' "

In *Faulkner v. Mammoth Mining Co.* (Utah), 66 Pac. 799, it was held that a miner who was engaged, by order of his foreman, in excavating at a place which the foreman assured him was safe, had a right to rely on such assur-

ance, and did not assume the risk incident to the surroundings. In *Thompson v. Chicago, M. & St. P. Ry. Co.,* 14 Fed. 564, the complaint alleged that the deceased was directed by the representative of the defendant to excavate earth from an embankment, where, by reason of the fact that a portion of the earth of the embankment was mixed with sand and fine gravel, it was liable to cave off and fall upon the deceased. It was further alleged that the deceased was not acquainted with such work, and did not know the effects of such excavating, or the liability to danger of the earth of such embankments, and that he believed the bank was secure. It was further alleged that the condition of the bank was known to the employer. The complaint was held to state a cause of action. In *Ross v. Shanley,* 185 Ill. 390 (56 N. E. 1105), the injured person was ordered to work in a tunnel. He was experienced in tunnel work, and it was contended that he assumed the risk incident to defective shoring in the tunnel. Upon that subject the language of the appellate court of Illinois, which was approved by the supreme court, is as follows, at page 1106 (185 Ill. 393), of the opinion:

" 'But it is said that appellee assumed the risk of any dangers of his work, and, being an experienced man in tunnel work, was chargeable with knowledge of any defects in the shoring which existed; that he knew, or could have known by the exercise of ordinary care on his part, any such defects as well as appellants' foreman. This contention is not, in our opinion, tenable. Appellants' foreman was chargeable with a specific duty, to-wit: that of exercising reasonable care to see that the place where he sent appellee to work was reasonably safe, and appellee had the right to rely upon the performance of such duty by appellants' foreman before he gave the order for him to work where he did. Appellee was not required to make a critical and careful examination of his surroundings at the place where he was sent to work by the foreman. We think it

was properly left to the jury to determine whether appellants' foreman exercised such reasonable and ordinary care to see that the place where he ordered appellee to work was reasonably safe before he sent him there to work, and also whether appellee knew, or should have known, the danger to which he was exposed.' "

In *Shortel v. St. Joseph,* 104 Mo. 114 (16 S. W. 397, 24 Am. St. Rep. 317), a section of a sewer had been arched over. The engineer directed a workman to go under the arch and remove the supports. In doing so he was injured. It was contended that the danger was obvious, and that the workman assumed the risk. The court said at pages 397 and 398 (104 Mo. 120):

"The master and servant do not stand upon an equal footing, even when they have equal knowledge of the danger. The position of the servant is one of subordination and obedience to the master, and he has the right to rely upon the superior knowledge and skill of the master. The servant is not entirely free to act upon his own suspicions of danger. If, therefore, the master orders the servant into a place of danger, and the servant is injured, he is not guilty of contributory negligence, unless the danger was so glaring that a reasonably prudent person would not have entered into it."

In *Wolf v. Great Northern Ry. Co.,* 72 Minn. 435 (75 N. W. 702), the injured party was directed by the foreman to tear down a wall of stone and mortar by first removing a section of stone from the front of the lower part of the wall. It was in the spring of the year, and the foreman told the workman that the frost would hold it, and that the wall was safe. The result was that the upper wall fell and injured the workman. It was contended that the danger was obvious, and that the plaintiff assumed the risk; but the court held that while such might have been true with an ordinary earth wall, yet a wall of stone and mortar is supposed to have lateral support by reason of the adher-

ence of the mortar, and refused to hold that the danger was so obvious that plaintiff assumed the risk. The argument there applied may be said to apply in some degree to the upper portion of the wall in the case at bar,—sufficient, at least, to make it a question for the jury whether the danger was so obvious that a reasonably prudent man would have refused to work there when directed by his foreman, and when assured by him that it was safe. In *Illinois Steel Co. v. Schymanowski* 162 Ill. 447 (44 N. E. 876), a workman was employed at night to assist in loading iron ore which another gang of employees working in the daytime had loosened from a large pile; the pieces so detached requiring to be broken with picks. He was working at the foot of the pile, where it was perpendicular, and asked the foreman for more light; the night being dark. The foreman told him, with an oath, to go to work, and, seizing a pick, struck the pile several times at the perpendicular place, and directed plaintiff to work there. The plaintiff obeyed the order, and soon afterwards was struck by a large piece of ore which fell from the pile. It was held that the question of the defendant's liability was for the jury. It was further held that where the master orders a servant to perform certain work, the latter has a right to assume that the master, with his superior knowledge, will not expose him to unnecessary peril, and, though such servant has some knowledge of the danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances. We therefore think the court properly submitted this case to the jury. We think it was not for the court to say, as a matter of law, that the respondent was guilty of contributory negligence, and did not act as an ordinarily prudent person would have done, when all the circumstances were

considered, but that question was for the jury. This court has repeatedly held that generally the question of contributory negligence is for the jury, and that the court is rarely justified in withdrawing it from the jury; that, to justify the withdrawal of the case from the jury, the acts done must be so palpably negligent that there can be no two opinions concerning them in the minds of reasonable men. *McQuillan v. Seattle,* 10 Wash. 464 (38 Pac. 1119, 45 Am. St. Rep. 799); *Steele v. Northern Pacific Ry. Co.,* 21 Wash. 287 (57 Pac. 820); *Traver v. Spokane St. Ry. Co.,* 25 Wash. 225 (65 Pac. 284); *Jordan v. Seattle,* 26 Wash. 61 (66 Pac. 114); *Burian v. Seattle Electric Co.,* ·26 Wash. 606 (67 Pac. 214).

The above discussion disposes of the principal questions raised in the case. The remaining assignments of error are based upon the instructions given by the court, and upon the refusal to give certain others requested by appellant. We have examined the charge of the court, and we believe it fairly and pointedly stated the law of the case in harmony with the views heretofore expressed. We do not, therefore, deem it necessary to discuss the instructions. The facts were properly submitted to the jury, and they were plainly told by the court that, even though they should find that respondent was ordered by the foreman to work at the place and in the manner as respondent claims, still he could not recover if the danger was so obvious and apparent that an ordinarily careful and prudent man would, under like circumstances, have refused to obey. This, we think, was a true statement of the law. The jury found the facts against appellant, and, since we find no error on the part of the court, the judgment is affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR, ANDERS and MOUNT, JJ., concur.

WHITE, J., not sitting.